# EXHIBIT A

**FOULSTON SIEFKIN LLP**
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206-4466
316.267.6371

620-921-5496

## IN THE TWENTY-SEVENTH JUDICIAL DISTRICT
## DISTRICT COURT, RENO COUNTY, KANSAS
## CIVIL DEPARTMENT

| | |
|---|---|
| JACK REDMAN III and KARIE REDMAN, *Plaintiffs*, v. HEARTLAND BUILDERS, LLC, *Defendant.* | Case No. 2018-CV-_____ |

## PETITION

Plaintiffs Jack and Karie Redman allege the following in support of their claims against defendant Heartland Builders, LLC:

### THE PARTIES

1. Jack and Karie Redman ("Plaintiffs") are residents of Reno County, Kansas.

2. Heartland Builders, LLC ("Defendant") is a Kansas limited liability company, registered with the Kansas Secretary of State.

3. Defendant may be served with process by serving its resident agent, Brian Teichmann, at 1100 N. Airport Road, Suite 114, Hutchinson, KS 67501.

### JURISDICTION AND VENUE

4. The events and conduct giving rise to this action occurred in Reno County, Kansas.

5. Defendant maintains its registered office in Reno County, Kansas.

6. Venue is proper in Reno County, Kansas.

7. The Court has jurisdiction over this action.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

8. Plaintiffs bought a house at 803 Rolling Dunes Road, Hutchinson, Kansas (the "Property"), in March 2016.

9. They spent the next year remodeling the house, turning it into their dream home.

10. In March 2017, soon after all the remodeling projects were finally complete, wildfires consumed Plaintiffs' home.

11. Nothing was left of the home but a few stone fixtures.

12. Plaintiffs needed someone to build them a new home on the Property.

13. Local news coverage of Plaintiffs' plight led Defendant to contact Plaintiffs.

14. Defendant offered to build Plaintiffs' new home for a lower-than-normal cost as a way to advertise Defendant's services.

15. Defendant informed Plaintiffs that its team had constructed several homes for others in the community and would provide Plaintiffs with excellent service.

16. Plaintiffs decided to retain Defendant to build their new home.

17. On May 26, 2017, Plaintiffs and Defendant executed the General Construction Agreement (the "Agreement").

18. In the Agreement, Plaintiffs agreed to pay Defendant cost plus 10% for all work performed.

19. Defendant told Plaintiffs' insurance carrier that it would be able to construct the new home in less than one year from the date of the fire.

20. Defendant began work to construct Plaintiffs' new home in June 2017.

2

21. Construction progressed unusually slowly.

22. Eventually, Plaintiffs became suspicious of Defendant's charges.

23. Plaintiffs investigated and learned that Defendant had been overcharging them on materials and labor by a significant amount.

24. For instance, Defendant overcharged Plaintiffs by nearly $7,000.00 for a heated floor in the basement.

25. Defendant's wrongdoing was not confined to billing, however.

26. When Plaintiffs visited the Property to inspect progress on their new home, it became evident that Defendant was not constructing the home properly.

27. The following is a small portion of the list of problems created by Defendant's shoddy, unworkmanlike construction:

   a. The roof was constructed incorrectly, resulting in Plaintiffs losing the benefit of the manufacturer warranty on at least one key piece of the structure;

   b. A deck was so poorly constructed that it is not safe for use;

   c. Defendant installed mismatched windows throughout the home;

   d. The Property must be re-graded, as the grading currently directs water toward the home instead of away from it; and

   e. Many of the floor trusses were improperly installed and are not safe to continually bear weight until additional support is added.

28. Defendant ceased work on the home in early December 2017, but Defendant's general contractor had disappeared from the jobsite in November 2017—Plaintiffs had to oversee the last month's work by Defendant's subcontractors.

29. At that time, the home was not fit to be finished, let alone lived in.

30. The home still is not fit to be finished or lived in.

31. The cost and difficulty involved in correcting all of the problems created by Defendant's substandard work has caused at least one contractor to decline to work on the home, thus further stalling Plaintiffs' ability to finish constructing the home.

32. It has been more than a year since the fire destroyed Plaintiffs' home.

33. Because more than a year has elapsed and construction on the new home remains unfinished, Plaintiffs have lost the ability to collect a substantial sum of money from their home insurance carrier.

34. The Agreement contains an arbitration clause.

35. Under K.S.A. 5-401(c) of the Kansas Uniform Arbitration Act, a written agreement to arbitrate controversies arising subsequent to the writing is not enforceable where a party to the agreement raises tort claims.

36. The claims alleged in this action are all tort claims or are not covered by the Agreement's arbitration provisions.

## COUNT ONE: FRAUD

37. Plaintiffs incorporate by reference paragraphs 1 through 37 as though fully set forth herein.

38. Defendant represented to Plaintiffs that its costs were substantially higher than they actually were.

39. Defendant knew that its costs were not as high as what it told Plaintiffs.

40. Defendant also represented to Plaintiffs that it was competent to construct their new home and that it would provide them with a workmanlike end result.

41. Defendant knew that it was not competent to construct Plaintiffs' new home properly and in a workmanlike manner.

4

42. Defendant made these false representations to Plaintiffs in order to deceive Plaintiffs and obtain a greater profit by doing so.

43. Plaintiffs relied on Defendant's representations.

44. Because Plaintiffs relied on Defendant's representations they have incurred more than $75,000.00 in damages.

## COUNT TWO: NEGLIGENT CONSTRUCTION

45. Plaintiffs incorporate by reference paragraphs 1 through 45 as though fully set forth herein.

46. Defendant represented to Plaintiffs that it would construct their new home in a workmanlike manner.

47. Defendant owed Plaintiffs a duty of care, which included constructing the home in a workmanlike manner.

48. Defendant failed to construct the home in a workmanlike manner.

49. Defendant therefore failed to discharge the duties it owed to Plaintiffs.

50. As a direct and proximate cause of Defendant's negligent conduct, Plaintiffs have incurred more than $75,000.00 in damages.

## COUNT THREE: UNJUST ENRICHMENT

51. Plaintiffs incorporate by reference paragraphs 1 through 51 as though fully set forth herein.

52. Defendant misrepresented its costs when constructing Plaintiffs new home, causing the final cost to Plaintiffs—and thereby profit to Defendant—to substantially increase.

53. Defendant knew or had reason to know that its cost to construct Plaintiffs' home was much lower than it represented to Plaintiffs.

54. Plaintiffs paid Defendant for its work.

55. Defendant thus received a benefit from Plaintiffs' payments that is not equitable for Defendant to retain.

## COUNT FOUR: NEGLIGENT MISREPRESENTATION

56. Plaintiffs incorporate by reference paragraphs 1 through 56 as though fully set forth herein.

57. Defendant represented to Plaintiffs that its costs were substantially higher than they actually were.

58. Defendant had reason to know that its costs were not as high as what it told Plaintiffs.

59. Had Defendant exercised reasonable care in obtaining information about the work being performed on Plaintiffs' home, it would have known that its costs were not as high as it represented to Plaintiffs.

60. Defendant also represented to Plaintiffs that it was competent to construct their new home and that it would provide them with a workmanlike end result.

61. Defendant had reason to know that it was not competent to construct Plaintiffs' new home properly and in a workmanlike manner.

62. Had Defendant exercised reasonable care in obtaining information about its employees' and subcontractors' abilities, it would have known that they were not competent to construct Plaintiffs' home properly and in a workmanlike manner.

63. Defendant also told Plaintiffs' home insurance carrier that it would complete construction on the home in less than one year from the date of the fire.

64. Defendant had reason to know that it would not complete construction on the home in less than one year from the date of the fire.

6

65. Had Defendant exercised reasonable care in obtaining information about its own workload and the availability of its employees and subcontractors, it would have known that it could not complete construction on the home in less than one year from the date of the fire.

66. Plaintiffs relied on Defendant's representations.

67. Because Plaintiffs relied on Defendant's representations they have incurred more than $75,000.00 in damages.

## COUNT FIVE: DECEPTIVE ACTS UNDER THE KCPA

68. Plaintiffs incorporate by reference paragraphs 1 through 68 as though fully set forth herein.

69. Plaintiffs engaged Defendant to construct a house for them that would serve as their primary residence.

70. Plaintiffs thus constitute consumers under the Kansas Consumer Protection Act ("KCPA").

71. Defendant is a dealer in and seller of home construction services and therefore constitutes a supplier under the KCPA.

72. The transaction between Plaintiffs and Defendant was a consumer transaction, protected by the KCPA.

73. Defendant and/or its agents committed the following deceptive acts under the KCPA:

   a. Representing that certain costs were higher than they actually were;

   b. Representing that Defendant was competent to build the home in a workmanlike manner when it was not competent to do so;

   c. Representing that Defendant would complete the home in less than one year from the date of the fire; and

7

    d. Representing that Defendant's work on the home was competent and workmanlike when, in reality, it was substandard at best.

74. These acts constitute distinct and separate violations of the KCPA's provisions prohibiting deceptive acts and practices.

## COUNT SIX: UNCONSCIONABLE ACTS UNDER THE KCPA

75. Plaintiffs incorporate by reference paragraphs 1 through 75 as though fully set forth herein.

76. Defendant and/or its agents committed the following unconscionable acts under the KCPA:

    a. Defendant's poor workmanship resulted in a house that was so poorly constructed that Plaintiffs were deprived of the ability to receive a material benefit from Defendant's services; and

    b. Defendant made repeated, misleading statements of opinion on which Plaintiffs relied to their detriment, such as Defendant's statement that it was competent to construct the home in a workmanlike manner.

77. These acts constitute distinct and separate violations of the KCPA's provisions prohibiting unconscionable acts and practices.

WHEREFORE, Plaintiffs ask the Court to enter judgment in their favor and against Defendant for damages in an amount exceeding $75,000.00; for attorney fees under K.S.A. 50-634; for all costs and fees; for post-judgment interest on the entire judgment at the statutory rate; and for such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues in this action.

Respectfully submitted,

FOULSTON SIEFKIN LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206-4466
T: 316.267.6371
F: 866.347.1468


By */s/ Kyle J. Steadman*
Kyle J. Steadman (#17205)
ksteadman@foulston.com
ATTORNEY FOR PLAINTIFFS